JOHN D. VAN LOBEN SELS (SBN: 201354)
jvanlobensels@fishiplaw.com
Fish & Tsang, LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA  94065
Telephone:   (650) 517-9800
Facsimile:    (650) 517-9898

MEI TSANG (SBN: 237959)
mtsang@fishiplaw.com
GENEVIEVE HALPENNY (SBN: 301409)
ghalpenny@fishiplaw.com
Fish & Tsang, LLP
2603 Main Street, Suite 1000
Irvine, CA 92614
Telephone: (949) 943-8300
Facsimile: (949) 943-8358

TODD WINTER (SBN: 230971)
twinter@winterllp.com
Winter LLP
1901 Newport Boulevard, Suite 350
Costa Mesa, CA 92627
Tel:  (949) 999-2059 | Fax: (949) 999-2059

Attorneys for Plaintiffs
RAIHANA HEUER AND PT KANDUI VILLAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PT SARAINA KOAT MENTAWAI, PT KANDUI RESORT MENTAWAI, PT KANDUI BEACH VILLAS, AND RAIHANA HEUER<br><br>          Plaintiffs,<br><br>     v. | Case No.:<br><br>Honorable<br><br>**COMPLAINT FOR:**<br><br>**1)   Breach of Fiduciary Duty—Failure to Use Reasonable Care;**<br><br>**2)   Breach of Fiduciary Duty—Duty** |

1

ANTHONY MARCOTTI; D3 HOLDINGS, LLC; JOESPH DOWLING; RAYMOND WILCOXEN; AND ANOM SUHERI,

Defendants.

of Undivided Loyalty;

3) **Breach of Fiduciary Duty—Duty of Confidentiality;**

4) **Breach of Implied Covenant of Good Faith and Fair Dealing;**

5) **Misappropriation of Trade Secrets;**

6) **Accounting;**

7) **Breach of Contract; and**

8) **Declaratory judgment of non-infringement.**

**DEMAND FOR JURY TRIAL**

PT Saraina Koat Mentawai ("SKM"), PT Kandui Resort Mentawai ("Kandui Resort"), PT Kandui Beach Villas ("Kandui Villas"), and Raihana Heuer ("Heuer"), by and through their counsel, bring this Complaint against Anthony Marcotti, D3 Holdings, LLC, Joe Dowling, Raymond Wilcoxen, and Anom Suheri (collectively, "Defendants") for breach of fiduciary duties, breach of the duty of good faith and fair dealing, trade secret misappropriation, an accounting, breach of contract, and a declaratory judgment of non-infringement. SKM, Kandui Villas, and Heuer seek injunctive relief, compensatory damages, and punitive damages.

## **PARTIES**

1.      SKM, Kandui Resort, and Kandui Villas are partnerships organized under the laws of Indonesia. SKM provides charter cruise services and owns the licenses under which Kandui Resort operates. Kandui Resort and Kandui Villas are hotels that provide recreational services located in Pulau Karangmajat in the Mentawai Islands of Indonesia. Heuer is a citizen of Indonesia and owns 50% of SKM, 20% of Kandui Resort, and 38.5% of Kandui Villas.

2

**COMPLAINT**

2.      Upon information and belief, Anthony Marcotti ("Marcotti") is a U.S. citizen, residing at 629 Camino de los Mares #101, San Clemente, CA 92673. Anthony Marcotti owns 20.5% Kandui Resort and serves as a booking agent and accountant for Kandui Resort.

3.      Upon information and belief, D3 Holdings, LLC ("D3") is a Delaware limited liability company located at 134 Indian Head Road, Riverside, CT 06878, owned and controlled by managing member, Joseph Dowling III. D3 is successor in interest to John and Ainsley Ocean's 20% ownership stake in Kandui Resort.

4.      Upon information and belief, Raymond Wilcoxen ("Wilcoxen") is a U.S. citizen residing in Indonesia. Wilcoxen owns 16% of Kandui Resort and manages its operations.

5.      Upon information and belief, Anom Suheri ("Suheri") is an Indonesian citizen, residing in Indonesia. Suheri owns 50% of SKM, 14% of Kandui Resort, and 11.25% of Kandui Villas.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) (trademark), 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademark).

7.      There is an actual justiciable controversy between the parties arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051-72, 1111-29, and declaratory relief is proper under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.      This Court has supplemental jurisdiction of state law claims alleged herein under 28 U.S.C. § 1367(a).

9.      Venue is proper in this District under 28 U.S.C. § 1391(b), (c), because defendant Marcotti resides in this district, PT Kandui Resort offers for sale and

**COMPLAINT**

sells resort booking services in this District, and the place where the contract was formed and breached is in this District.

## FACTUAL BACKGROUND

10.     This is an action that concerns Defendants' breach of fiduciary duties, Defendants' breach of the implied covenant of good faith and fair dealing, Defendants' self-dealing, Marcotti's trade secret misappropriation, an accounting of dividends Kandui Resort owes Heuer for 2012- 2015, and Defendants' continued breach of contract.

11.     This action also concerns Heuer's registration and use of the trademarks "KANDUI" and "KANDUI VILLAS" to market Kandui Villas' resort accommodations and merchandise. Specifically, Heuer's registration and use of these trademarks does not infringe the common law trademark rights accruing to Kandui Resort.

### PT Saraina Koat Mentawai

12.     Plaintiff Heuer and defendant Suheri each own half of SKM. In 2001, Marcotti offered to build a website to promote Heuer's charter boat, KM Aileoita.

13.     Heuer, her husband, Jordan Heuer, ("Mr. Heuer"), Suheri, and Marcotti entered a profit sharing agreement in which SKM booked surf charter tours on multiple charter boats. Marcotti worked as the booking agent for SKM in exchange for one third of SKM profits.

14.     Mr. Heuer and Marcotti developed the content of the SKM website, www.mentawaiislands.com, which Marcotti registered, built, and maintained.

15.     SKM never turned a profit, because Marcotti priced the boat charters too low, offered discounts, accepted partially full charters, spent excessive amounts of SKM funds on advertising, used SKM funds for SurfAid charity events, and paid his personal income taxes using SKM funds. Heuer and Suheri

objected to these practices, but Marcotti continued to make unilateral decisions. Marcotti transferred seven fully booked charters from SKM to a competing charter service, Indies Trader. As a result of Marcotti's practices, SKM charters operated at a loss.

16.     In 2005, Marcotti accepted an offer to work as booking agent for Indies Trader, a competitor of SKM. Marcotti downsized SKM and directed SKM clients to Indies Trader, eventually leaving SKM to work for Indies Trader on or about January 14, 2008. Upon his departure, Marcotti contacted SKM clients and encouraged them to go with him to Indies Trader, made disparaging comments about SKM boats by implying they were less safe than Indies Trader boats– damaging SKM's reputation.

17.     Marcotti gave Mr. Heuer one week to transfer the jointly developed content from www.mentawaiislands.com to a new website www.mentawaiislands.co.id, which Mr. Heuer maintained.

18.     Mr. Heuer assumed management duties at SKM and asked Marcotti for SKM's client contacts, which Marcotti had in his possession as a fiduciary of SKM. After months of repeating these requests, Marcotti sent a limited number of client contacts to Mr. Heuer. SKM never recovered from Marcotti's derogatory comments and the failure to transfer the full list of SKM client contacts to Mr. Heuer in a timely manner.

**PT Kandui Resort Mentawai**

19.     Meanwhile, in June 2003, the Heuers obtained an investment to build a resort on Karamajat Island. The Heuers created the name "Kandui Resort." SKM acquired necessary resort permits and leased the permits to Kandui Resort. The Heuers and Suheri verbally agreed that land acquired for Kandui Resort ("Resort Land") would be placed 50% in Heuer's name and 50% in Suheri's name. Heuer and Suheri further agreed to lease the Resort Land to Kandui resort for 99 years.

**COMPLAINT**

However, Suheri placed all the Resort Land in his own name, and Heuer did not discover Suheri's failure to certify her ownership interest in the Resort Land until the five land certificates issued and named only Suheri as owner. Heuer reminded Suheri of their agreement, and Suheri verbally agreed to correct the land certificates to reflect Heuer's 50% ownership of the Resort Land. Suheri corrected the first five land certificates per the agreement. However, Heuer is informed and believes that Kandui Resort funds were used to purchase at least five more parcels of land without Heuer's consent, and that Suheri failed to name Heuer as 50% owner of those parcels in the land certificates as agreed.

20.     The Heuers also verbally agreed to exchange 25% of the resort in return for Marcotti's services to build and maintain the resort website, manage the promotions and advertising, and book guests to stay at the resort without commissions. As 25% owner, Marcotti would be compensated only by dividend payments at the end of each year.

21.     In October 2003, the original investor from June 2003 backed out, and in January 2004, the Heuers found replacement investors, Amen McDonald, John Ocean, and Ainsley Ocean to fund the construction of Kandui Resort. Suheri, Heuer, Marcotti, the Oceans, and McDonald are referred to as the "Founders" of Kandui Resort.

22.     The ownership interests in Kandui Resort according to the initial agreement are summarized in the table below:

| Name | % Ownership Interest | Contribution |
|------|---------------------|--------------|
| Anom Suheri | 25% | Lease land (SKM); obtain permits |
| Raihana and Jordan Heuer | 25% | Lease land (SKM); obtain permits |

6

**COMPLAINT**

| Anthony Marcotti | 25% | Build and maintain website; services as booking agent |
| John and Ainsley Ocean | 12.5% | $250,000; help building the resort |
| Amen McDonald | 12.5% | $250,000; help building the resort |
| **Total** | 100% | |

23.    In July 2004, construction of Kandui Resort began on Karamajat Island.

24.    In, March 2005 John Ocean asked to adjust the original ownership interests in the resort without changing the investment capital structure. The Founders agreed, and the adjusted ownership interests are summarized below:

| Name | % Ownership Interest | Contribution |
| --- | --- | --- |
| Anom Suheri | 20% | Lease land (SKM); obtain permits |
| Raihana and Jordan Heuer | 20% | Lease land (SKM); obtain permits |
| Anthony Marcotti | 20% | Build and maintain website; services as booking agent |
| John and Ainsley Ocean | 20% | $250,000; help building the resort |
| Amen McDonald | 20% | $250,000; help building the resort |
| **Total** | 100% | |

7

**COMPLAINT**

25.    On or about July 11, 2005, Suheri and Heuer on behalf of SKM, Marcotti, Mr. Heuer, and John Ocean, executed a document titled "Contract Agreement of Kandui Resort." McDonald was listed as a party to the contract, but did not sign. In the contract, Suheri, Marcotti, and John (and Ainsley) Ocean each owned 20% of Kandui Resort; and Heuer, Mr. Heuer, Mc Donald (with Kenneth and Jolle), and Wilcoxen each owned 10%. The contract was presented to Mr. Heuer in Indonesian, which he was not yet able to speak or read, and he signed the agreement without having had the opportunity to review an English translation. Although some of the terms of the contract were consistent with the parties' agreement at the time it was executed, other terms were inconsistent with the parties' agreement. For example, Article 4, sections a and b reflect the parties' agreement with respect to capital contributions of the Oceans, the McDonalds, and Wilcoxen, but sections c and d obliging all parties to contribute additional funds did not. Additionally, it was always the Heuer's intent that Heuer would hold her 50% of the Resort Land in her own name, not her husband's. Other terms that were correctly stated include the 99 year term (Article 3) and the right of first refusal (Article 5).

26.    On or about July/August 2005 McDonald informed the Heuers that he was unable to deliver his full capital contribution, and the Heuers recruited Wilcoxen to assume half of McDonald's investment. Under the revised agreement, McDonald and Wilcoxen were each to invest $125,000 in exchange for 10% ownership of Kandui Resort. Ultimately, McDonald contributed $50,000 for 4% of Kandui Resort, and Wilcoxen contributed $200,000 for 16%.

27.    Heuer and Suheri duly leased the land for a 99-year term, and SKM licensed all necessary permits. Kandui Resort opened April 11, 2006. Kandui Resort continues to operate under license by SKM. Marcotii collected all guest payments in the U.S. and deposited the money in U.S. bank accounts that he

controlled. Kandui Resort made no profit in 2006. However, Marcotti used funds from SKM and Kandui Resort to pay his personal income taxes in the U.S.

28.     Because Marcotti controlled all of the guest payments, he sent funds to legitimate company bank accounts in Indonesia at his whim. In 2006 & 2007, Marcotti co-mingled SKM and Kandui Resort funds by depositing the co-mingled funds into a single bank account in the U.S. Marcotti then proceeded to send both companies' funds to the SKM bank account in Indonesia and provided Heuer with only vague accounting reports.

29.     Marcotti developed business plans for the operation of SKM and Kandui Resorts including advertising budgets, rates, and discounts. Marcotti implemented his plans unilaterally despite objections from investment partners. Neither company turned a substantial profit.

30.     Marcotti continued to use both SKM's and Kandui Resort's funds to pay his personal income taxes without Heuer's consent.

31.     In October 2007, Marcotti started to demand commissions in addition to the dividend payments from his 20% ownership stake and the withdrawals made to pay his income taxes. None of the Kandui Resort Founders agreed to Marcotti's commission proposals, and Marcotti ultimately agreed to continue as a booking agent under the original agreement for his share of the dividends as 20% owner.

32.     The Kandui Resort Founders sold interests in Kandui Resort to each other in a series of transactions. After Mr. Heuer learned that the maximum foreign ownership of Indonesian resorts and hotels is only 50%, Mr. Heuer transferred his interest in Kandui Resort to Heuer. In 2008, Andrew Meredith bought an interest in Kandui Resort from Wilcoxen, and in November 2009, Joseph Dowling through his company D3 Holdings, LLC bought John and Ainsley Ocean's interest in Kandui Resort. Marcotti and Dowling conducted the

transaction with the Oceans without first notifying or offering their interest to the Heuer or Suheri as required by the agreement. Heuer learned of the transaction and attempted to recruit an investor, but was unable to do so before the Oceans and Dowling competed their transaction. Dowling wired his payment directly to the Oceans's personal bank account instead of the Kandui Resort company account. The transaction was conducted without acknowledgement by Kandui Resort's legal owners, Heuer and Suheri, and no Indonesian government taxes were ever paid on the sale.

33.     On information and belief, the ownership of Kandui Resort after these transactions is summarized below and has remained the same until now:

| Name | % Ownership Interest |
| --- | --- |
| Anom Suheri | 14.5% |
| Raihana Heuer | 20% |
| Anthony Marcotti | 20.5% |
| D3 Holdings, LLC | 20% |
| Amen McDonald | 5% |
| Raymond Wilcoxen | 16% |
| Andrew Meredith | 4% |
| **Total** | 100% |

34.     Since 2006, Marcotti has not provided any original bank statements or guest booking data, and since 2009, Marcotti has not provided Heuer with any financial summaries. Marcotti argued that Heuer was not entitled to financial information about Kandui Resort, because of her involvement with Kandui Villas. However, on information and belief, Marcotti provided financial information, including Kandui Resort's guest booking numbers to Suheri despite his 11.25% ownership in Kandui Villas.

35.     In 2009, Marcotti began paying himself commissions by summarized

10

in the table below:

| Year | Commission |
|------|------------|
| 2009 | $17,500 |
| 2010 | $32,101 |
| 2011 | $130,000 |
| 2012 | $158,750 |
| **Total** | $338,351 |

36.    Plaintiffs are informed and believe that Marcotti paid booking commissions from Kandui Resort funds through an account in the name of Antidote Travel, LLC ("Antidote Travel"), Marcotti's personal booking agency. Heuer never authorized or otherwise consented to these commissions. Heuer believes that Marcotti paid himself commissions in 2013, 2014, and 2015. However, Heuer has not been able to verify the amounts or commission rate, because Marcotti provided insufficient accounting records from 2009-2013 and has refused all of Heuer's requests to inspect Kandui Resort's books for 2014 and 2015.

37.    Marcotti withheld Heuer's dividends from Kandui Resort's 2013 company profits until November 2014 and demanded that Mr. Heuer change Kandui Villa's website. Marcotti has withheld and continues to withhold dividends rightfully owed to Heuer for 2014 and 2015.

38.    Beginning in 2011, Marcotti has used Kandui Resort company funds to pay for his personal lawyer fees in disputes with Heuer without Heuer's authorization or consent.

39.    Plaintiffs are informed and believe that Marcotti misappropriated money from Kandui Resort in 2013 to fund his investment in a resort in Vanubaka, Fiji. Heuer has not been able to confirm this suspicion because of Marcotti refusal to allow her to inspect Kandui Resort's books.

**COMPLAINT**

40.     Plaintiffs are informed and believe that Marcotti threatened McDonald and Meredith that he would withhold their 2014 and 2015 dividends and their ownership interest in Kandui Resort after formation of a Kandui Resort PMA, unless they join his legal attack against Heuer in Indonesia.

41.     Marcotti, Suheri, and Wilcoxen also have paid themselves "bonuses" and "salaries" without the approval of the other partners. On information and belief, Heuer believes Suheri's collected $1,000 per month in addition to "bonuses" in unknown amounts until 2014, at which point, Suheri began collecting and continues to collect $2,000 per month in addition to "bonuses" in unknown amounts. On information and belief, Wilcoxen collected $1,000 per month from Kandui Resort funds until 2014, at which point he began to collect and continues to collect $4,000 per month. These payments subtract from the profits to be paid to all the partners, harming Heuer.

42.     Starting in or around 2012 through about 2014, Wilcoxen unilaterally took over Kandui Resort's photography business and kept the profits for himself without Heuer's consent.

43.     In October 2013, Nicolas Woodman ("Woodman") showed a desire to buy an interest in Kandui Resort from Marcotti and D3 for 1.6 million U.S. dollars. In March 2014, Andrew Sriro, acting on behalf of Woodman, conditioned the sale of Marcotti's and D3's interests on (1) the formation of a Penamanan Modal Asing ("PMA") company, (2) the transfer of all Kandui Resort assets to the PMA, (3) the PMA's acquisition of 4 or 5 star resort status, (4) the transfer 52.42 acres of property from Suheri and Heuer to the PMA, (5) Woodman's purchase of Marcotti's and Dowling's interests. The defendants asked the Heuers to agree to change the terms of their agreement as demanded by Woodman. Because Woodman's proposed terms were detrimental to the Heuers's interests in the land and trademarks, they did not agree to change the terms of the agreement.

Negotiations with Woodman broke down in October 2014.

**PT Kandui Villas**

44.     Other, competing hotel and resort companies developed an interest in developing Karangmajat Island. Before other companies could develop the island, in August 2007, the Heuers, Suheri, and three new investors recruited by the Heuers bought additional land on Karangmajat Island and started the Kandui Villas project. The land bought for Kandui Villas is owned 50% by Heuer and 50% by Suheri and leased to Kandui Villas for 99 years.

45.     At the start of the Kandui Villas project, all Kandui Resort Partners were offered interests in Kandui Villas in exchange for help building and operating Kandui Villas. Wilcoxen declined. Marcotti showed interest, but demanded (1) that no more than three buildings be built, (2) that he have control over how the resort would be designed, (3) that he have control over the business plan, (4) that he receive 15% of the gross for booking commissions, and (5) that he receive 25% ownership of Kandui Villas.

46.     Because Marcotti's demands were so unreasonable, the Heuers declined his terms and formed Kandui Villas without him. Marcotti told McDonald that if Marcotti's demands were not met, he would do everything in his power to stop Kandui Villas from being successful. Toward that end, in his January 14, 2008 email to SKM clientele, Marcotti promoted a competing resort in Nicaragua that he was working with.

47.     On January 30, 2011 Marcotti threatened Edwin Stevens, owner of Clear Water Travel in Holand, over use of the key words "kandui" and "resort" with Google Ad Words for promoting Kandui Villas. Marcotti filed a complaint with Google to have Kandui Villas website blocked and removed from the internet and Google search engines, alleging that Kandui Villas copied text from an old version of the Kandui Resort website. Google determined that only two

**COMPLAINT**

pages of twenty-seven were impermissibly similar. Those two pages contained text that Mr. Heuer had helped to create for the SKM website and that Marcotti had allowed Mr. Heuer to load to the new SKM website. Even though Mr. Heuer had the right to use those two pages, he changed the text of those two pages to render the dispute moot.

48.    Marcotti also contacted other worldwide travel agent partners of Kandui Villas and attempted to make them stop using "kandui" and "uma" in their promotions. Marcotti also offered to allow the travel agents to work for Kandui Resort if they stopped working with Kandui Villas. On information and belief, no travel agents accepted any of Marcotti's offers.

# FIRST CLAIM FOR RELIEF

## Breach of Fiduciary Duty—Failure to Use Reasonable Care

49.    Plaintiffs incorporate by reference every allegation set forth above.

50.    Marcotti, Wilcoxen, and Suheri are Heuer's partners in Kandui Resort.

51.    Marcotti acted on Heuer's behalf for purposes of marketing resort accommodations and services, collecting funds, and banking.

52.    Marcotti failed to act as a reasonably careful partner would have acted under the same or similar circumstances by at least: (1) by comingling Resort funds in his personal bank account, (2) failing to keep adequate records, (3) refusing to provide access to Kandui Resort books and records, (4) making management decisions without notifying Heuer or obtaining her consent, (5) misappropriating funds to pay for competing resort projects, (6) paying himself booking commissions without consent, (7) using Kandui Resort funds to pay his personal expenses, including legal fees in proceedings against Heuer, and income taxes, and (8) paying Wilcoxen and Suheri salaries, which Wilcoxen and Suheri collected and continue to collect without consent.

**COMPLAINT**

53.     The conduct of Marcotti, Wilcoxen, and Suheri harmed and continues to harm Kandui Resort and Heuer. As a 20% owner of Kandui Resort, Heuer was harmed and continues to be harmed by the withholding of access to Kandui Resort's books and records, the withholding of dividends owed, and by the reduction of Heuer's dividends by the transfer of Kandui Resort's funds to Marcotti, Wilcoxen, and Suheri without Heuer's consent.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty—Duty of Undivided Loyalty

54.     Plaintiffs incorporate by reference every allegation set forth above.

55.     Defendants are Heuer's partners in Kandui Resort.

56.     Marcotti acted on behalf of himself, Wilcoxen, Suheri, and competitors, whose interests were adverse to Heuer.

57.     Marcotti marketed and served as a booking agent for resorts that compete with Kandui Resort.

58.     Marcotti used Kandui Resort funds to fund competing resort projects.

59.     Marcotti used Kandui resort Funds to pay himself booking commissions at rates he set himself.

60.     Marcotti paid Wilcoxen and Suheri salaries, which Wilcoxen and Suheri collected without Heuer's consent.

61.     Defendants knowingly acted against Heuer's interests in connection with Nicholas Woodman's attempts to purchase Kandui Resort by repudiating the previous agreement and demanding that Heuer and Suheri transfer the resort land and that Heuer transfer her trademark registrations to a new Kandui Resort PMA.

62.     Heuer did not give informed consent to Marcotti's conduct.

63.     The conduct of Marcotti, Wilcoxen, and Suheri harmed and continues to harm Kandui Resort and Heuer. As a 20% owner of Kandui Resort, Heuer was harmed and continues to be harmed by the withholding of access to Kandui

**COMPLAINT**

Resort's books and records, the withholding of dividends owed, and by the reduction of Heuer's dividends by the transfer of Kandui Resort's funds to Marcotti, Wilcoxen, and Suheri without Heuer's consent.

## THIRD CLAIM FOR RELIEF

### Breach of Fiduciary Duty—Duty of Confidentiality

64.    Plaintiffs incorporate by reference every allegation set forth above.

65.    Marcotti is Heuer's partner as co-owners of Kandui Resort.

66.    Marcotti had information relating to Kandui Resort, including Kandui Resort client lists that he knew or should have known were confidential.

67.    Marcotti used SKM's and Kandui Resort's confidential information for his own benefit by using Kandui Resort's customer while working as a booking agent for competing resorts.

68.    Marcotti communicated SKM's and Kandui Resort's confidential information to third parties including affiliates of a competing resort on Malolo Island in Fiji.

69.    On information and belief, Marcotti used SKM and Kandui Resort client lists to promote his personal booking agencies, Antidote Travel and Statika, which promote competing resorts on the Mentawai Islands and the Maldive islands.

70.    Heuer did not give informed consent to Marcotti's conduct.

71.    The confidential information was not a matter of general knowledge.

72.    Heuer and Kandui Resort were harmed by Marcotti's use and disclosure of Kandui Resort's customer list to further his career as a booking agent for competing resorts and by the resulting loss of clients. Marcotti's conduct was a substantial factor in causing Heuer's harm.

## FOURTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing

16

73.     Plaintiffs incorporate by reference every allegation set forth above.

74.     Heuer, Marcotti, Wilcoxen, and Suheri entered into an agreement in which Heuer and SKM would lease land to Kandui Resort for 99 years and each owner would be entitled to dividends proportional to their ownership stake.

75.     Heuer and SKM leased land to Kandui Resort pursuant to the 99 year agreement.

76.     Heuer acted in accordance with the agreed upon ownership interests of Marcotti, Wilcoxen, and Suheri.

77.     Marcotti unfairly interfered with Heuer's right to receive the benefits of the agreement by refusing her requests to inspect Kandui Resort's books, by reducing dividends paid to Heuer from 2009-2013, by paying himself a commission without her consent, by failing to pay dividends for 2014 and 2015, and by paying Wilcoxen and Suheri bonuses and salaries without Heuer's consent.

78.     Wilcoxen interfered with Heuer's right to receive the benefits of the agreement by taking Kandui Resort funds without Heuer's consent and by taking the profits from Kandui Resort's photography business.

79.     Suheri interfered with Heuer's right to receive the benefits of the agreement by taking Kandui Resort funds without Heuer's consent.

80.     As director of Kandui Resort, Suheri failed to allow Heuer to inspect Kandui Resort's books, to inform Heuer of Kandui Resort's new land purchases and to provide Heuer with an opportunity to vote on Kandui Resort business decisions.

81.     Heuer has been harmed by the conduct of Marcotti, Wilcoxen, and Suheri.

## **FIFTH CLAIM FOR RELIEF**

### **Misappropriation of Trade Secrets**

82.     Plaintiffs incorporate by reference every allegation set forth above.

83.     Heuer and SKM have ownership interests in SKM's client list, client contact information, and other information about SKM's clients.

84.     Heuer and Kandui Resort have ownership interests in Kandui Resort's client list, client contact information, and other information about Kandui Resort's clients.

85.     SKM's client list and Kandui Resort's client list, as well as other information about clients of SKM and Kandui Resort were a trade secrets at the time of Marcotti's misappropriation.

86.     Marcotti improperly used and disclosed SKM's and Kandui Resort's customer lists and information to promote competing surf charter boats and resorts in Nicaragua and Fiji and to persuade other competing surf charter companies and resorts to use him as their booking agent without consent from Heuer, SKM, or Kandui Resort.

87.     Heuer, SKM, and Kandui Resort were harmed by the loss of clients to the Indies Trader, Antidote Travel, and resorts with whom Marcotti shared Kandui Resort's customer list, and Marcotti was unjustly enriched.

88.     Marcotti's use and disclosure of SKM's and Kandui Resort's customer lists were substantial factors in causing harm to Heuer, SKM, and Kandui resort, and in causing Marcotti to be unjustly enriched.

## SIXTH CLAIM FOR RELIEF

### Accounting

89.     Plaintiffs incorporate by reference every allegation set forth above.

90.     As a direct and proximate result of Defendants' acts as alleged herein, Heuer has been and continues to be injured in her business and property, and has sustained and will continue to sustain substantial damage to its business, goodwill, reputation, and profits in an amount not presently known, while Defendants are

18

**COMPLAINT**

profiting at Heuer's expense in an amount not presently known.  Those profits rightfully belong to Heuer.

91.     The amount of the profits wrongfully realized by Defendants beginning in 2009 is unknown to Heuer and cannot by ascertained without an accounting.  The information that is needed to establish that amount due is peculiarly within the knowledge of Defendants. Heuer, therefore, demands an accounting for the aforementioned profits wrongfully realized by Defendants from their activities as alleged herein.

## SEVENTH CLAIM FOR RELIEF

### Breach of Contract

92.     Plaintiffs incorporate by reference every allegation set forth above.

93.     Heuer and Suheri entered into an oral agreement with Defendants in which (1) Kandui Resort would lease land from Heuer and Suheri pursuant to the terms of a 99 year lease, (2) Defendants and Heuer would each receive dividends proportional to their ownership interests in Kandui Resort, (3) the founders of Kandui Resort have a right of first refusal, and (4) Marcotti would receive a 20% interest and the corresponding dividends in Kandui Resort in exchange for his services as a booking agent.

94.     Heuer and Suheri leased land to Kandui Resort according to the terms of the agreement.

95.     As a 20% owner of Kandui Resort, Heuer is entitled to inspect Kandui Resort's books, and she is entitled to dividends proportional to her ownership interest.

96.     Defendants have failed to provide bank statements since 2006, accounting records provided for 2009-2013 were inadequate, and Defendants failed to produce any records for Heuer's inspection for 2014 and 2015.

97.     Defendants have withheld and continue to withhold payment of

dividends owed Heuer as required by the agreement.

98.    Moreover, Defendants are now attempting to modify the agreement to either increase the term of the Resort Land lease from 99 years to a perpetual license or transfer the Resort Land to a new Kandui Resort PMA company.

99.    According to the contract, Marcotti is entitled to dividends proportional to his ownership interest in Kandui Resort. However, in addition to these dividends (and without Heuer's consent), Marcotti has paid and continues to pay himself booking commissions, pay his personal expenses with Kandui Resort funds, and pay his personal income taxes out of Kandui Resort funds.

100.   According to the contract, Wilcoxen is entitled to dividends proportional to his 16% interest in Kandui Resort. However, in addition to these dividends (and without Heuer's consent), Wilcoxen has collected $2,000 per month. Beginning in 2014, Wilcoxen collected and continues to collect $4,000 per month.

101.   According to the contract, Suheri is entitled to dividends proportional to his 14% interest in Kandui Resort. However, in addition to these dividends (and without Heuer's consent), Suheri has collected $1,000 per month and "bonuses." Beginning in 2014, Suheri collected and continues to receive $2,000 per month and "bonuses."

102.   As a 20% owner of Kandui Resort, Heuer was harmed and continues to be harmed by the withholding of access to Kandui Resort's books and records, the withholding of dividends owed, and by the reduction of Heuer's dividends by the transfer of Kandui Resort's funds to Marcotti, Wilcoxen, and Suheri without Heuer's consent.

## EIGHTH CLAIM FOR RELIEF

### Declaratory Judgment of Non-Infringement

103.   Plaintiffs incorporate by reference every allegation set forth above.

**COMPLAINT**

104.   An actual controversy exists regarding the trademarks "KANDUI" (Registration Nos. 4078037 and 4717526) and "KANDUI VILLAS" (Registration No. 4052051) registered and owned by Heuer. Defendants, Suheri, Marcotti, Wilcoxen, and D3 Holdings, LLC ("Petitioners") filed a petition to cancel these three registrations on September 29, 2015, alleging (1) Heuer made a false representation to the USPTO with intent to deceive the USPTO, (2) Heuer is not the rightful owner of the KANDUI mark, and (3) likelihood of confusion with "Kandui Resort" a mark used by "Founders" before registration of the KANDUI and KANDUI VILLAS marks under section 2(d) of the Trademark Act.

105.   On November 10, 2015, Heuer filed a motion to dismiss the petition for failure to plead (1) standing for each individual petitioner, (2) harm that would give rise to standing, (3) priority to establish grounds under section 2(d) of the Trademark Act, (4) likelihood of confusion, (5) lack of statutory basis for "other" grounds asserted, (6) failure to allege fraud on the USPTO with particularity, and on the grounds that the petition is moot, because Petitioners admit Heuer has rights in the registered mark.

106.   For at least these reasons and for the reasons set forth below, Heuer seeks declaratory judgment of right to register KANDUI and KANDUI VILLAS. Heuer and Kandui Villas seek declaratory judgment that their use of KANDUI and KANDUI VILLAS does not infringe any valid trademark rights.

107.   First, Petitioners do not have a protectable interest in the KANDUI mark. The Founders started and operated a resort in Indonesia that they "agreed to name" Kandui Resort. The Heuers conceived of the name, Kandui Resort. Thus, Heuer is included in the "Founders" of Kandui Resort and has rights in the KANDUI trademarks, including the right to use the KANDUI and KANDUI VILLAS trademarks in association with goods and services offered by Kandui Villas.

**COMPLAINT**

108.   Second, Heuer's and Kandui Villas' use of the mark cannot cause consumer confusion, because analysis of the eight factors enumerated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) weigh in favor of a finding of non-infringement.

a.      The strength of the mark–In 2005, Marcotti registered the domain name kanduiresort.com and published promotional materials for Kandui Resort. Guests from the United States booked trips from California to visit Kandui Resort. Kandui Resort has become a world famous surfing destination, is widely advertized, and maintains Facebook, Twitter, and Instagram accounts that collectively have ever 25,000 followers.

b.      The similarity of the marks–Kandui Resort shares the word "Kandui" with Kandui Villas as well as common ownership (Heuer and Suheri).

c.      The marketing channels used–Marcotti and other booking agents market and advertise Kandui Resort. Kandui Villas also uses booking agents to obtain guest reservations.

d.      The proximity of the goods–Kandui Resort and Kandui Villas are both located on Karangmajat Island, Indonesia.

e.      Defendant's intent in selecting its mark–Heuer selected the marks "Kandui" and "Kandui Villas" to expand the "Kandui" brand on Karangmajat Island while also excluding other competing hotel and resort companies. Heuer also intends to expand the Kandui brand to hotels and resorts worldwide, beginning with a hotel in Texas, U.S.

f.      Evidence of actual confusion–Consumers cannot be confused between Kandui Resort and Kandui Villas, because the two resorts are affiliated, at least by common ownership of Heuer and Suheri.

g.      The likelihood of expansion of the product lines–Expansion of the Kandui brand to other hotels, resorts, travel services, and merchandise worldwide

**COMPLAINT**

is an expansion of the Kandui brand.

109.   The type of goods and the degree of care likely to be exercised by the purchaser–Any association consumers make between Kandui Resort, Kandui Villas, and future Kandui expansion projects is appropriate, because these companies and potential projects are affiliated.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a.      For an injunction granting Heuer access to Kandui Resort's books and records for inspection;

b.      For an accounting of amounts owed to Kandui Resort and Heuer from the breaches of fiduciary duties performed by Marcotti, Wilcoxen, and Suheri that resulted in misappropriation of Kandui Resort funds, unjust enrichment of Defendants, and other losses;

c.      For an injunction ordering Marcotti (1) to turn over to SKM, Kandui Resort, and Heuer complete client lists and client information for SKM and Kandui Resort and (2) to stop using SKM's and Kandui Resort's client lists to promote other charter boat services and resorts;

d.      For an injunction ordering Suheri to correct the Resort Land certificates to name Heuer as 50% owner;

e.      For an injunction ordering Defendants to notify and include Heuer in meetings involving Kandui Resort business;

f.      For an injunction ordering Defendants to cease and desist from transferring Resort Land to a new PMA company;

g.      For an injunction ordering Defendants to stop withdrawing Kandui Resort funds for any "commissions," "salaries," "bonuses," and unapproved loans paid to Defendants, as well as to stop making unapproved payments and loans to Antidote Travel and any other of Marcotti's businesses or investments, and to stop

**COMPLAINT**

any other unapproved transfers of value for Kandui Resort property;

  h.  For rescission of the sale of a 20% interest in Kandui Resort to D3 Holdings and Joseph Dowling;

  i.  For declaratory judgment that Kandui Villas and Heuer have the right to register and use the Kandui and Kandui Villas trademarks;

  j.  For the principal sum in an amount for no less than seven hundred fifty thousand dollars ($750,000), according to proof at trial, for amounts paid from Kandui Resort funds to Marcotti, Wilcoxen, and Suheri, and for dividends owed Heuer;

  k.  For interest on said sum at the legal rate per annum from the date of breach through the date of judgment according to proof at the time of trial;

  l.  For punitive damages in the amount of seven hundred fifty thousand dollars ($750,000);

  m.  For reasonable attorneys' fees;

  n.  For cost of suit incurred herein;

  o.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

  Pursuant to Federal Rule of Civil Procedure 38, Raihana Heuer and PT Kandui Villas hereby demand a jury trial.


DATED:  12/28/2015    FISH & TSANG, LLP


           By: /s/ John D. van Loben Sels
              JOHN D. VAN LOBEN SELS

              Attorneys for Plaintiffs
              PT SARAINA KOAT MENTAWAI,
              PT KANDUI RESORT, PT KANDUI
              VILLAS, AND RAIHANA HEUER

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**